NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EDWARD POWELL, | |
| Plaintiff, | Civil Action No. 10-558 (RBK-KW) |
| v. | **OPINION** |
| COMMISSIONER CARL DANBERG, et al., | |
| Defendants. | |

**KUGLER**, United States District Judge**:**

Plaintiff Edward Powell ("Plaintiff"), a former inmate at the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware, filed this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights and raising supplemental state claims. He has since been released. Presently before the Court is a Motion to Dismiss filed by Defendants Commissioner Carl Danberg ("Danberg") and Warden Perry Phelps ("Phelps") (together "State Defendants"), opposed by Plaintiff. (D.I. 23, 26.)

**I.  BACKGROUND**

The Court conducted an initial screening of the Complaint and dismissed several Defendants, but allowed Plaintiff to proceed against State Defendants and some medical defendants. (D.I. 7.) Plaintiff began his incarceration in May 2008. The Complaint alleges that, prior to his incarceration, the United States Department of Justice ("DOJ") provided to the Governor of the State of Delaware its findings of the DOJ Civil Rights Division's investigation

that focused on medical and mental health care and the conditions and practices of five Delaware Department of Correction ("DOC") facilities. The facilities included the VCC (formerly known as the Delaware Correctional Center), where Plaintiff was incarcerated. Plaintiff alleges that even after four years following the investigation, Danberg "failed to act, take control, or correct" the errors of the contract medical service provider, Defendant Correctional Medical Services ("CMS"), that Danberg's failure caused Plaintiff to suffer because of medical errors by CMS, and that Danberg's failure to provide adequate medical services violated Plaintiff's constitutional rights.[1] (D.I. 2, ¶¶ 4, A.)

With regard to Phelps, the Complaint alleges that he is responsible for insuring that Plaintiff received safe and proper medical care. According to Plaintiff, he continued to be injured by CMS because Phelps failed to act on Plaintiff's complaints. In addition, the Complaint alleges that Phelps failed to provide and oversee Plaintiff's safety and protection once the medical service provider was proven to be unsafe. Finally, the Complaint alleges that Phelps failed to effectively act on Plaintiff's complaints and grievances. (Id. at ¶¶ 5, B.)

State Defendants move for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that the Complaint fails to allege the requisite personal involvement on behalf of State Defendants and does not establish a causal link between the alleged acts of Danberg and/or Phelps and Plaintiff's alleged constitutional deprivation.

---

[1] CMS provided medical services to inmates at the VCC until June 30, 2010 and, according to Plaintiff, it allowed its medical personnel to injure Plaintiff through improper medical treatment and the failure to follow policies and procedures. (Id. at ¶¶ 6, C.) The Complaint and its exhibits refer to acts that took place from June 4, 2008 through June 5, 2010. (D.I. 2, 4.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted. When ruling on a motion to dismiss, "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In addition to the allegations of the complaint, a court may consider matters of public record, documents specifically referenced in or attached to the complaint, and documents integral to the allegations raised in the complaint. Mele v. Federal Reserve Bank of N.Y., 359 F.3d 251, 255 n.5 (3d Cir. 2004).

In making that determination, a court must conduct a two-part analysis. Ashcroft v. Iqbal, – U.S.– , 129 S.Ct. 1937, 1949–50 (2009); Fowler, 578 F.3d at 210-11. First, the court must separate factual allegations from legal conclusions. Iqbal, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Second, the court must determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common sense." Id. A complaint cannot survive where a court can only infer that a claim is merely possible rather

than plausible. See id. Because Plaintiff proceeds pro se, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

## III. DISCUSSION

### A. Personal Involvement

State Defendants move for dismissal on the grounds that Plaintiff failed to demonstrate their personal involvement in the deprivation of Plaintiff's rights and that the claims are based upon their supervisory positions.

A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." Baraka v. McGreevey, 481 F.3d 187, 210 (3d Cir. 2007). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). The Third Circuit has reiterated that a § 1983 claim cannot be premised upon a theory of respondeat superior and, that in order to establish liability for deprivation of a constitutional right, a party must show personal involvement by each defendant. See Brito v. United States Dep't of Justice, 392 F. App'x 11, 14 (3d Cir. 2010) (not published) (citing Iqbal, 129 S.Ct. at 1948-49); Rode v. Dellarciprete, 845 F.2d at 1207).

The State has an obligation to provide medical care to incarcerated individuals. "Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of

4

the means to vindicate their Eighth Amendment rights." West v. Atkins, 487 U.S. 42, 56 (1988); See also Ancata v. Prison Health Services, Inc., 769 F.2d 700, 705 (11th Cir. 1985). Moreover, "where the duty to furnish treatment is unfulfilled, the mere contracting of services with an independent contractor does not immunize the State from liability for damages in failing to provide a prisoner with the opportunity for such treatment." Crooks v. Nixon, 872 F.2d 800, 804-04 (8th Cir. 1989) (citing West, 487 U.S. at 55-56). Finally, where prison officials contract with outside doctors to furnish medical services the prison officials are not provided "absolute immunity against a prisoner's claim where prison policies are alleged to contribute to the denial of proper medical . . . care." Crooks v. Nix, 872 F.2d 800,803-804 (8th Cir. 1989).

In addition, "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" A.M. ex rel. J.M.K. v. Luzerne Cnty. Detention Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (citing Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)). The United States Court of Appeals for the Second Circuit explains that, "'[a] supervisory official may be liable because he or she created a policy or custom under which constitutional practices occurred, or allowed such policy or custom to continue.'" Cuoco v. Moritsugu, 222 F.3d 99, 109 (2d Cir. 2000).

Here, the Complaint alleges that State Defendants knew that CMS had a policy or custom of failing or refusing to provide medical treatment to inmates yet they continued to contract with CMS who provided substandard medical services, thus allowing the practice to continue. See Grose v. Caruso, 284 F. App'x 279 (6th Cir. 2008) (not published) (Allegations by state prisoner

that prison officials knew of substantial criticisms and legal actions taken against the prison's contracted medical provider, including its alleged misdiagnosis and delayed medical treatment of inmates, and that because the officials continued to contract with the provider, and failed to establish policies and training to prevent the provision of inadequate medical care, the officials acquiesced to contractor's failure to properly diagnose prisoner's knee fractures, which resulted in prisoner's permanent disability, stated a § 1983 claim against officials for deliberate indifference to prisoner's serious medical needs in violation of the Eighth Amendment ); Prosser v. Nagaldinne, Civ. No. 08-44-DJS, 2008 WL 268950 (E.D. Mo. Jan. 30, 2008) (complaint survived initial review where it alleged that defendants who knew of medical contract provider's failure or refusal to provide medical treatment to prisoners, nevertheless continue to contract with it to provide substandard medical services to inmates at facilities governed by the State Department of Corrections). The claims are not based upon a theory or respondeat superior but, rather, are based upon State Defendants' knowledge and personal involvement. The allegations, as they now stand, are adequate to survive the Motion to Dismiss. Accordingly, the Court will deny State Defendants' Motion to Dismiss as to the issues of personal involvement and respondeat superior.

    **B.    Grievances**

The Complaint alleges that Phelps failed to effectively act on Plaintiff's complaints and grievances. The filing of prison grievances is a constitutionally protected activity. Robinson v. Taylor, 204 F. App'x 155, 157 (3d Cir. 2006) (not published). To the extent that Plaintiff bases his claims upon his dissatisfaction with the grievance procedure or denial of his grievances, the

claims fail because an inmate does not have a constitutionally protected right to a grievance procedure. Caldwell v. Beard, 324 F. App'x 186, 189 (3d Cir. 2009) (not published) (citing Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)). In addition, a denial of a grievance appeal does not in itself give rise to a constitutional claim as Plaintiff is free to bring a civil rights claim in District Court. Winn v. Department Of Corr., 340 F. App'x 757, 759 (3d Cir. 2009) (not published) (citing Flick v. Alba, 932 F.2d at 729. Plaintiff cannot maintain a constitutional claim against Phelps based upon his perception that his grievances were not properly processed or that the grievance process is inadequate. Accordingly, the Court will dismiss all grievance claims raised against Phelps.

## IV. CONCLUSION

For the reasons set forth above, the Court will grant in part and deny in part the Motion to Dismiss.

Date: August 5, 2011        s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge